**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **VIRGINIA NAVARRO,** | § | |
| | § | |
| **V.** | § | **A-12-CV-040-LY-AWA** |
| | § | |
| **CAROLYN W. COLVIN,[1]** | § | |
| **ACTING COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Virginia Navarro's Complaint seeking reversal of the final decision of the Social Security Administration (Dkt. No. 5); Plaintiff's Brief (Dkt. No. 15); and Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 16). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  GENERAL BACKGROUND**

Plaintiff Virginia Navarro ("Navarro") filed her application for disability insurance benefits and supplemental security income on July 2, 2009, alleging disability beginning January 1, 2009, due to her diabetes and chest pains. Tr. at 114, 119, 156. Navarro also cited shortness of breath as

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security following the expiration of Michael J. Astrue's six-year term as Commissioner.

reasons limiting her ability to work.  Tr. at 156.  Navarro's claims were denied initially on July 23,

2009, and upon reconsideration on October 1, 2009.  Tr. at 54, 65.  After Navarro filed a written

request for a hearing, a hearing was held before an Administrative Law Judge ("ALJ") on April 6,

2010.  Tr. at 25.  On September 15, 2010, the ALJ issued his decision finding that Navarro was not

disabled within the meaning of the Social Security Act beginning January 1, 2009, through the date

of the decision.[2]  Tr. at 12–21.  After the Appeals Council declined to review Navarro's case on

November 14, 2011, the ALJ's decision became the final administrative decision of the

Commissioner for purposes of the Court's review pursuant to 42 U.S.C. § 405(g).  Tr. at 1.  Navarro

filed the instant lawsuit on January 12, 2012, pursuant to 42 U.S.C. 405(g), requesting that the Court

reverse or remand the ALJ's decision denying her disability insurance benefits and supplemental

security income.

## II.  STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment . . . which

has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  To determine if a claimant is able to engage in "substantial gainful activity" (and

therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1.   a claimant who is working, engaging in a substantial gainful activity, will not be
     found to be disabled no matter what the medical findings are;

2.   a claimant will not be found to be disabled unless he has a "severe impairment;"

---

[2] For the purposes of disability insurance benefits, Navarro is insured under the requirements
of the Social Security Act through December 31, 2013.  Tr. at 14.

3.      a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4.      a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5.      if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520.  A finding of disability or no disability at any step is conclusive and terminates the analysis.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work."  *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).  Substantial evidence is more than a scintilla of evidence but less than a preponderance-in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions

of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In other words, the Court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III.  FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After considering all of the evidence before him, the ALJ determined that Navarro had the following severe impairments: (1) diabetes mellitus; (2) palpitations; (3) right knee pain; and (4) depression under 20 C.F.R. §§ 404.1520(c) and 416.920(c). Tr. at 14. However, the ALJ found Navarro's impairments individually or in combination did not meet or medically equal any of the listed impairments under the regulations. Tr. at 15. The ALJ concluded that Navarro had the residual functional capacity ("RFC") to perform a wide range of medium work, as defined in 20 C.F.R. § 404.1567(c), with the ability to lift, carry, push, or pull fifty pounds occasionally and twenty-five pounds frequently and that Navarro could stand, walk, or sit for six hours out of an eight-hour work day. Tr. at 16. The ALJ also determined that Navarro:  could occasionally balance and climb stairs and ramps; could not climb ladders, ropes, and scaffolds; and could not work at unprotected heights and around dangerous machinery. Tr. at 16. Finally, the ALJ found Navarro

4

capable of understanding, remembering, and carrying out routine instructions and but that she should avoid work requiring independent decision-making.  Tr. at 16.

Based upon this RFC, the ALJ determined that Navarro could not perform any of her past relevant work.  Tr. at 19.  However, considering Navarro's age, education, work experience, and RFC, the ALJ found that Navarro could perform certain unskilled, medium work including working as a hardware assembler, grocery handler or bagger, and non-construction laborer.  Tr. at 20. Consequently, the ALJ concluded that Navarro was not under a disability as defined by the Social Security Act and denied her application for disability insurance benefits and supplemental security income.

## VI.  ANALYSIS

Navarro brings one point of contention with regard to the ALJ's decision.  She argues that the ALJ's determination that she is not disabled "is not supported by substantial evidence and is the result of legal errors."  Dkt No. 15 at 3.  Specifically, Navarro claims that the ALJ's failure to include a sit/stand option as a result of Navarro's impairments warrants remand where the record as a whole supports such a limitation.  *Id.* at 3–10.  Although Navarro concedes the record contains no medical opinion expressing a need for a sit/stand option, she contends that based on the record, "it is clear that regularly scheduled breaks and a lunch period would not be sufficient to accommodate this limitation."  *Id.* at 8.  Furthermore, Navarro highlights that she need not produce objective evidence of the pain itself or its severity, but is only required to show objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or symptoms. *Id.* (citing 42 U.S.C. § 423(d)(5)(A)).  In response, the Commissioner asserts that the Court only evaluates whether there is substantial evidence in the record to support the ALJ's decision; it is the

ALJ's responsibility to weigh and consider the evidence presented.  Dkt. No. 16 at 3.  The Commissioner urges the Court to affirm the ALJ's decision because there is substantial evidence in the record to support that decision.

After reviewing the Parties' briefs, the ALJ's decision, and the record, the undersigned finds that Navarro's contention lacks merit.  As an initial matter, the proper question for this Court is whether the ALJ's decision is supported by substantial evidence, not whether the record contains evidence to support a sit/stand option.  *Kinash*, 129 F.3d at 738.  Yet Navarro's brief fails to address any of the ALJ's analysis concerning medical evidence in the record that the ALJ found to be inconsistent with Navarro's allegations of functional limitations.  Rather, to support her claim that the ALJ erred in failing to include a sit/stand option in his RFC determination, Navarro merely cites to and describes in detail her medical history as well as her testimony at the hearing.  Dkt. No. 15 at 4–8.  Aside from mentioning the ALJ's RFC finding, there is virtually no discussion of the ALJ's opinion and no contention regarding how the rest of the evidence in the record supports her claims of disability.  This Court does not reverse or remand an ALJ's decision simply because there is evidence in the record to support a claimant's contention.  The Court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision."  *Harrell*, 862 F.2d at 475.

Furthermore, Navarro's assertion that she is only required to show objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged is unconvincing.  The section relied upon by Navarro, 42 U.S.C. § 423(d)(5)(A), merely states that a claimant's testimony as to pain or other symptoms cannot be conclusive evidence of disability and that objective medical evidence must be offered and considered when determining

whether a claimant is disabled.  *Id.*  It does *not* establish that the production of objective medical evidence resolves the question of whether a particular impairment is disabling.  Even when a claimant has presented objective evidence of an underlying impairment that could be reasonably expected to produce the symptoms alleged, the ALJ must still consider a claimant's allegations regarding her limitations along with other evidence in the record when making a determination of disability.  *See* 20 C.F.R. § 404.1529.  Therefore, the mere fact that there is evidence in the record supporting Navarro's contention that a sit/stand option was necessary in the ALJ's RFC assessment does not end the Court's analysis.  Additionally, Navarro's failure to discuss any of the ALJ's analysis does not support her argument that the record "as a whole" supports the need for a sit/stand option.  The relevant question in this case remains whether the ALJ's decision is supported by substantial evidence.

From the ALJ's opinion, it is clear that the ALJ considered Navarro's testimony, her treatment history, and the opinions of the state agency medical physicians in making his RFC determination.  Tr. at 16–19.  Although the ALJ concurred that "some level of pain and limitation could reasonably be expected as a result of [Navarro's] medically determinable impairments," he concluded that Navarro's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent" with the ALJ's RFC assessment.  Tr. at 17–18.  At the hearing, Navarro represented that she was unable to work due to her knee pain, diabetes, and palpitations of her heart.  Tr. at 30.  Navarro stated that she had a lot of palpitations.  Tr. at 30.  While the record shows that Navarro complained of palpitations in June, 2009, it also demonstrates that an echocardiogram performed in July, 2009, showed no significant issues with Navarro's heart.  Tr. at 305–06; 338–39.  The doctor stated that heart chamber sizes,

myocardial wall thickness, and aortic and mitral valves were all normal.  Tr. at 305; 338.

Additionally, the doctor concluded that the tricuspid valve was normal and there was no pericardial

effusion or pulmonary artery hypertension.  Tr. at 305; 338.  The doctor did find a mild degree of

stenosis, which "would indicate only very mild pulmonic valve stenosis."  Tr. at 305; 338.  As to

Navarro's allegations regarding her heart issues, the Court finds that there is substantial evidence to

support the ALJ's decision.

Navarro also represented at the hearing that she is unable to maintain control of her diabetes.

Tr. at 30.  Navarro alleged that her blood sugar was causing blurry vision, dizziness, shortness of

breath, dryness of the mouth, frequent visits to the bathroom, and problems sleeping.  Tr. at 33, 37,

39–40.  Despite Navarro's allegations regarding the limiting effects of her diabetes, the record shows

several instances where Navarro's diabetes was exacerbated due to noncompliance with treatment

and medication.  For example, treatment records from December, 2008, indicated that Navarro

presented with a blood sugar level of 319 and that she had been noncompliant with her diabetes

medication.  Tr. at 194–96.  Following treatment, Navarro reported a drop in pain level from ten out

of ten to zero out of ten.  Tr. at 197–99.  A doctor's visit in June, 2009, again revealed that Navarro

had been noncompliant with her medication and that she did not check her blood sugar at home.  Tr.

at 253.  During another doctor's visit in August, 2009, Navarro also represented that she does not

check her blood sugar at home as doing so hurts too much.  Tr. at 318.  Additionally, Navarro was

instructed on the proper usage of the levemir pen as well as changes to her diet that would be helpful

in managing her diabetes.  Tr. at 318.  Furthermore, medical records from October, 2009, again

demonstrated that Navarro had not properly managed her diabetes.  Tr. at 344–47.  After being

treated with regular insulin at the hospital, Navarro's blood sugar dropped from 344 to 166 and she reported her pain to be zero out of ten.  Tr. at 341–43.

A claimant's failure to follow recommended medical treatment can be grounds for finding the claimant not disabled.  *See* 20 C.F.R. § 404.1530(a), (b); *see also Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990).  Navarro stated at the hearing that her financial difficulties prevented her from obtaining the necessary medication to treat her diabetes.  Tr. at 36–38.  However, Navarro has not provided any evidence that shows she attempted to obtain but was unable to afford treatment.  Indeed, she represented at the hearing that she had not done so.  Tr. at 37.  The ALJ may consider a claimant's failure to seek medical treatment when facilities are available to the indigent.  *See* SSR 82-59, 1982 WL 31384 (Jan. 1, 1982).  Perhaps most importantly, there is no indication in the record that Navarro's alleged need for a sit/stand option derives from her diabetes.  Instead, exams in both June and July of 2009 showed a normal range of motion in all joints with no deformities.  Tr. at 250, 325, 331–32.  Another exam in October of 2009 also revealed no joint pain.  Tr. at 344.  The discussion of the record evidence above shows that there is substantial evidence to support the ALJ's decision regarding Navarro's allegations pertaining to her diabetes.  When Navarro complies with her treatment and medications, the record provides substantial evidence demonstrating that Navarro's diabetes can be controlled.  Navarro even testifies that she no longer has to make frequent trips to the restroom when she is taking her insulin.  Tr. at 40.  As such, this Court will not disturb the findings of the ALJ.

Navarro further noted that pain in her knees prevented her from working.  Tr. at 30.  At the hearing, Navarro stated that she could stand for forty-five minutes to an hour before she needed to sit down and represented that she could only walk for one block as she was afraid of falling.  Tr. at

34. She also complained of swelling and testified that while she experienced pain in both knees, the right one was worse. Tr. at 35–36. However, her treatment records provide evidence to the contrary. As mentioned previously, examinations in both June and July of 2009 showed a normal range of motion in all joints with no deformities. Tr. at 250, 325, 331–32. Reports from October, 2009, revealed no joint pain. Tr. at 344. More recently, a consultation in February, 2010, showed only mild enthesophyte formation of the superior patella at the attachment of the quadriceps tendon. Tr. at 358. The doctor found that there "may be very early degenerative joint disease of the tibiofemoral joint" with only "minimal early osteophytic lipping of the posterior tibial margin." Tr. at 358. There was also no evidence of fracture, dislocation, acute osseous abnormality or degenerative change. Tr. at 360. Navarro's subjective characterizations of her knee pain must be corroborated, at least in part, by objective medical evidence. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). An ALJ has the discretion to determine the disabling nature of a claimant's allegations of pain and "[s]uch determinations are entitled to considerable deference." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). After reviewing the evidence, the ALJ concluded that Navarro's representations concerning the severity of her knee pain were not completely credible. Tr. at 18. Thus, in this case, the ALJ found the medical evidence more persuasive than Navarro's testimony at the hearing, which is "precisely the kind[] of determination[] that the ALJ is best positioned to make" as the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Given the evidence discussed above, this Court will not substitute its judgment for that of the ALJ.

Finally, the ALJ also properly considered the findings of the state agency medical physicians as well as Navarro's daily activities. Tr. at 17–19; *see also* 20 C.F.R. § 404.1529(c)(3)(i). For

example, the ALJ noted that Navarro was able to do light chores around the house, assist in buying groceries, drive, and even travel to Mexico for three months.  Tr. at 17–19, 33, 324.  As for the findings of the state agency medical physicians, Dr. Patty Rowley determined that Navarro was capable of occasionally lifting fifty pounds, frequently lifting twenty-five pounds, and standing, sitting, or walking, with normal breaks, for six hours out of an eight-hour work day based on an evaluation of all the medical evidence.  Tr. at 308.  Upon review, Dr. Laurence Ligon affirmed these findings on September 25, 2009.  Tr. at 336.  While the ALJ agreed with the opinions of Drs. Rowley and Ligon on these findings, the ALJ also specifically noted that he further limited Navarro "to a reduced range of simple, medium work, including postural limitations" on account of her subjective allegations of depression and knee pain.  Tr. at 19.  "It is, of course, for the [Commissioner] to decide what weight to accord various medical reports." *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988).  When considered with the objective medical evidence mentioned above, the Court finds no reversible error in the ALJ's determination.

After reviewing Navarro's claims, the ALJ's decision, and the record, the undersigned concludes that the record contains substantial evidence to support the ALJ's decision.  The ALJ did not err in failing to include a sit/stand option in his assessment of Navarro's RFC.  Consequently, the undersigned will recommend that the District Judge overrule Navarro's contention and affirm the decision of the ALJ.

## V.  RECOMMENDATION

In accordance with the preceding discussion, the undersigned **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## VI.  WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 19th day of April, 2013.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE